1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY W. JAMES, | CASE NO. 1:08-CV-00351-DLB PC |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | (DOC. 59) |
| J. WILBER, et al., | CLERK OF COURT IS DIRECTED TO ENTER JUDGMENT AND CLOSE ACTION |
| Defendants. | |

_____/

### Order

## I.     Procedural History

Plaintiff Ricky W. James ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's complaint against Defendants M. Saenz, E. Johnson, and J. Wilbur for violation of the Eighth Amendment.  On March 5, 2010, Defendants filed a motion for summary judgment. Defs.' Mot. Summ. J., Doc. 59.  On March 29, 2010, Plaintiff filed his opposition.  Pl.'s Opp'n, Docs. 63, 64.[1]  No reply was timely filed.  The matter is submitted pursuant to Local Rule 230(l).

---

[1]  Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed February 20, 2009.  *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

1

1  II.    **Summary Judgment Legal Standard**

2          Summary judgment is appropriate when it is demonstrated that there exists no genuine

3  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

4  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

5          always bears the initial responsibility of informing the district court of the basis
           for its motion, and identifying those portions of "the pleadings, depositions,
6          answers to interrogatories, and admissions on file, together with the affidavits, if
           any," which it believes demonstrate the absence of a genuine issue of material
7          fact.

8  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the

9  burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be

10 made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

11 on file.'"  *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery

12 and upon motion, against a party who fails to make a showing sufficient to establish the existence

13 of an element essential to that party's case, and on which that party will bear the burden of proof

14 at trial.  *Id.* at 322. "[A] complete failure of proof concerning an essential element of the

15 nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In such a

16 circumstance, summary judgment should be granted, "so long as whatever is before the district

17 court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

18 satisfied."  *Id.* at 323.

19         If the moving party meets its initial responsibility, the burden then shifts to the opposing

20 party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

21 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

22         In attempting to establish the existence of this factual dispute, the opposing party may not

23 rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

24 form of affidavits, and/or admissible discovery material, in support of its contention that the

25 dispute exists.  Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must

26 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

27 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty*

28 *Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.*

1  *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the

2  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

3  nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v.*

4  *Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

5         In the endeavor to establish the existence of a factual dispute, the opposing party need not

6  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

7  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

8  trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

9  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

10 *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

11 amendments).

12        In resolving a motion for summary judgment, the court examines the pleadings,

13 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

14 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477

15 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

16 court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United*

17 *States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not

18 drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

19 which an inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-

20 45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

21        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

22 show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as

23 a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

24 issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).

25 ///

26 ///

27 ///

28 ///

III.     **Undisputed Facts**[2]

Plaintiff was incarcerated at California State Prison-Corcoran ("CSP-COR") during the relevant time in this action.

A.     **Defendant Saenz**

Defendant Saenz is a Licensed Vocational Nurse ("LVN") employed by the CDCR at CSP-COR.  An LVN is an entry level health professional.  Part of her training as an LVN includes training in emergency medical treatment.  She is not qualified to perform medical examinations or prescribe medications.  She is not qualified to evaluate dental conditions, including what may be a dental emergency. On June 11, 2006, in accordance with her emergency medical training, Defendant Saenz evaluated whether Plaintiff had a medical emergency based on his claims that he had an abscessed tooth.[3]  Based on Defendant Saenz's training, she determined that an abscessed tooth is not a life threatening emergency.  Therefore, she did not provide Plaintiff with emergency medical treatment or call for emergency medical treatment on June 11, 2006.  She therefore did not examine Plaintiff's mouth.  She did contact the dental department and passed along Plaintiff's request for emergency dental treatment.[4]  Based on her request, the dental department made an appointment for Plaintiff for June 21, 2006.  Plaintiff did not appear

---

[2] All facts are taken from Defendants' statement of undisputed facts and are considered undisputed, unless otherwise noted as a contention.  Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(e), all disputes with the movant's statement of facts must be supported with citation to evidence.  *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial").  Plaintiff provided a list of statements which he denies, but generally did not cite to any particular portions of any pleadings or other documents relied upon in support of the denials.  Plaintiff's verified complaint and opposition may be treated as opposing affidavits to the extent that they are verified and set forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985). The Court will consider only those facts and evidence that are relevant to resolving Defendants' motion for summary judgment.

[3] Plaintiff contends that this fact is disputed because Defendant admits she is not qualified to evaluate dental conditions.  It is unclear why Defendant Saenz cannot be qualified to evaluate emergency *medical* conditions even though she is unqualified to evaluate dental conditions.  Plaintiff's denial is overruled.  The Court notes that neither party provided a definition of abscessed tooth.

[4] Plaintiff denies this fact without citation to any supporting evidence.  Plaintiff's denial is overruled.  Any subsequent facts which Plaintiff denies without supporting evidence are all deemed overruled.

1   for that appointment, and he was rescheduled for the next available appointment.[5]   Defendant

2   Saenz contends that she provided Plaintiff with appropriate care under the standard of care for a

3   LVN in her position.  Plaintiff contends that he was unaware of his appointment with the dental

4   office, and that Defendant Saenz was incompetent in evaluating and reporting Plaintiff's dental

5   issues.  Plaintiff contends he was not seen by a dentist until after he filed an inmate grievance.

6       **B.    Defendant Wilbur**

7       Defendant Wilbur is a Doctor of Dental Surgery ("DDS").  As a DDS he is qualified to

8   prescribe medication.  As a DDS working for CDCR, Defendant Wilbur contends that he may

9   not prescribe nutritional supplements.  Defendant Wilbur contends that at CDCR institutions,

10  nutritional supplements must be prescribed by medical staff.[6]   Defendant Wilbur saw Plaintiff a

11  total of three times.  Each time Defendant Wilbur saw Plaintiff, Defendant contends that he

12  treated him to the best of his ability and provided him with appropriate dental care within the

13  standard of care of a dentist in his position.[7]   On the first visit with Plaintiff on July 17, 2006,

14  Defendant Wilbur contends that Plaintiff did not have an abscessed tooth, only a loose tooth

15  caused by chronic periodontal disease.[8]   His mouth was not infected.  The visit was not a dental

16  emergency.  Plaintiff contends that Defendant Wilbur confirmed that the tooth was abscessed.

17  (Pl.'s P. &. A. Support Opp'n 2, Doc. 64.).

18  ─────────────────

19      [5]   In his statement of undisputed facts, Plaintiff contends that the reason he never appeared was because he

20  was never called for a dental appointment.  Doc. 64, Pl.'s Statement of Disputed Facts 1.   Plaintiff's statement of
    disputed facts is verified under penalty of perjury and may be used as an affidavit in this instance.  However, his
    contention does not dispute Defendants' fact, as Defendants' fact never states the reason why Plaintiff never

21  appeared for the appointment.  Thus, Plaintiff's denial is overruled.

22      [6]   Plaintiff contends that dentists are allowed to prescribe nutritional supplements pursuant to section
    3350.1, Title 15 of the California Code of Regulations.  That section does not indicate that dentists are unable to

23  prescribe palliative therapies, such as nutritional support.  Plaintiff has sufficiently denied this statement.  It has been
    changed to indicate that Defendant Wilbur did not prescribe a soft food diet because he thought it was CDCR policy.

24      [7]   Defendant Wilbur has not demonstrated his qualifications as an expert in his field, and thus cannot testify

25  as an expert, including statements regarding the standard of care.  Fed. R. Evid. 702.  All such opinions will be re-
    categorized accordingly.

26      [8]   Plaintiff contends that he did have an abscessed tooth, citing to his inmate grievance.  Doc. 64, Ex. A.

27  Plaintiff may not testify as to whether his tooth was abscessed because he is not an expert in dentistry.  Fed. R. Evid.
    702.  Whether a tooth is abscessed requires qualified training and knowledge before the Court may accept it as a
    sufficient denial of Defendant's statement of fact.  However, Plaintiff also contends that Defendant Wilbur

28  confirmed the abscessed nature of the tooth.  The statement of fact is changed accordingly in Plaintiff's favor.

1    Defendant Wilbur extracted Plaintiff's tooth on July 17, 2006.  Defendant Wilbur
2  contends that Plaintiff did not have a dental emergency, while Plaintiff contends it was.
3  Defendant Wilbur contends that normally, pain is immediately relieved by the removal of a loose
4  tooth caused by periodontal disease.  Defendant Wilbur did not believe that Plaintiff needed pain
5  medication because pain from a loose tooth should subside once the sore tooth is removed.
6  Defendant Wilbur reviewed Plaintiff's medical records and found that Plaintiff was taking
7  Hydrocodone, an opiate-based pain medication, three times a day at 500 mg.[9]  Plaintiff was
8  actually taking a hydrocodone/APAP pain medication at 5/500 mg, respectively.  Defendant
9  Wilbur contends that even if the extraction of his tooth did not immediately relieve Plaintiff's
10  tooth ache, Defendant Wilbur found that 500 mg of hydrocodone three times per day should have
11  been more than sufficient to relieve any periodontal pain - even if Plaintiff was taking the pain
12  medication for another condition.

13    Because Plaintiff was already receiving significant pain medication, Defendant Wilbur
14  did not believe it would be appropriate to prescribe him more.[10]  Defendant Wilbur did not repair
15  Plaintiff's broken dentures because they were beyond repair.  Instead, he had Plaintiff sign a
16  dental agreement and began the process for obtaining new dentures for Plaintiff.[11]

17    Defendant Wilbur believed that Plaintiff's dental condition should not have prevented
18  him from being able to eat the mechanically soft food served at CSP-COR.[12]  Moreover,

19  _____

20      [9]  Plaintiff contends that this amount is inaccurate.  Plaintiff is correct.  Defendants' Exhibit 1 indicates that
Plaintiff was taking hydrocodone/APAP pain medication, which is 5/500 mg, respectively.  Defs.' Ex. 1, p. 000086.

21      [10]  Plaintiff contends that as a doctor, Defendant Wilbur should have known.  This is not sufficient to deny
22  Defendants' statement of fact.  Plaintiff cannot testify as a qualified expert regarding what a dentist should know.
The Court notes that this statement of fact relies upon Defendant's erroneous declaration that Plaintiff was receiving
23  500 mg of hydrocodone for an unrelated condition.

24      [11]  Plaintiff contends that Defendant Wilbur only ordered repair of his lower dentures.  Based on the
submitted evidence, Defendant Wilbur began the process of obtaining new dentures for Plaintiff.  Plaintiff signed an
25  agreement to  receive partial lower dentures on July 17, 2006.  Ex. A, p. 000128.  Plaintiff signed an agreement to
receive full upper dentures on October 11, 2006.  Ex. A, pp. 000119-20.  The statement that Defendant Wilbur
26  began the process of getting new dentures is thus accurate.  Plaintiff's denial is overruled.

27      [12]  Plaintiff contends that CSP-COR's food is not mechanically soft.  Plaintiff cites to his declaration, which
lists twenty-one food items that are routinely served daily, and which Plaintiff contends are not mechanically soft.
28  Pl.'s P. & A. Support Opp'n, Ex. C.  Plaintiff contends that he did not receive a wholesome diet.
     For a motion for summary judgment, the Court construes all facts presented in light most favorable to the

1  Defendant Wilbur contends that he could not prescribe a soft food diet or liquid nutritional

2  supplement because he could not under CDCR policy.[13]  Defendant Wilbur did not prescribe him

3  antibiotics because Plaintiff did not have an infection, and did not, therefore, need antibiotics.[14]

4          On August 9, 2006, Plaintiff saw Dr. Buenafe in the dental clinic.  She extracted his

5  lower tooth, number 18.  Dr. Buenafe saw Plaintiff again on August 16, 2006, and extracted his

6  lower tooth, number 31.  She noted that Plaintiff's previous extractions appeared to be healing

7  normally, with no facial swelling.

8          On September 9, 2006, Plaintiff's hydrocodone/APAP prescription was increased to four

9  times per day by a medical doctor due to a back condition.  On October 11, 2006, Defendant

10 Wilbur saw Plaintiff for a second time in the dental department.  Defendant Wilbur took an

11 impression of his teeth for a wax model in the process of making new dentures.  He ordered the

12 bite block.

13         Defendant Wilbur did not prescribe him pain medication because he was already

14 receiving hydrocodone four times a day, and more pain medication would not be appropriate.

15 Defendant Wilbur contends that any periodontal pain should have been controlled by the

16 prescribed pain medication, even if he was taking it for a different condition.

17         Plaintiff saw Defendant Wilbur for a third and final time on November 22, 2006.

18 Defendant Wilbur continued the process for making him new dentures by taking measurements

19 of his teeth, and ordering acrylic full upper dentures and partial lower dentures.  The prison

20 received the wax model of the dentures (bite block) on October 24, 2006.  On November 22,

21

22 non-moving party.  Plaintiff lists all the food items that are not mechanically soft.  However, there is no indication
   that these twenty-one food items were the only food options available on a daily basis.  It is entirely possible that
23 there were additional food choices available that would be mechanically soft.  Additionally, it was Defendant
   Wilbur's belief that the food at CSP-COR was mechanically soft.  Plaintiff presents no evidence to contradict
24 Defendant Wilbur's belief on the issue.  Thus, Plaintiff's objection is denied.

25    [13]  As stated previously,  section 3350.1, Title 15 of the California Code of Regulations does not indicate
   that dentists cannot prescribe a nutritional supplement.  Defendants' statement of fact is modified accordingly.

26    [14] Plaintiff contends that periodontal disease is an infection by definition.  Pl.'s P. & A. Support Opp'n 8.
27 Plaintiff cites to the Merriam-Webster Dictionary.  Periodontal disease is defined as "any disease (as gingivitis or
   periodontitis) affecting the periodontium."  Merriam-Webster's Online Medical Dictionary, http://www.merriam-
   webster.com/medical/periodontal%20disease (last visited November 27, 2010).  It does not state what is the cause of
28 the disease.  There is thus insufficient evidence to support Plaintiff's denial.

                                            7

1  2006, Defendant Wilbur used the bite block to take measurements of Plaintiff's mouth for a wax

2  set-up, which is a more finalized version of the wax model, and ordered acrylic dentures.

3  Defendant Wilbur did not see Plaintiff again after November 22, 2006.

4      On January 24, 2007, Plaintiff returned to the dental clinic for a "try in" of the final wax

5  model of his dentures.  Plaintiff accepted the dentures as they appeared in the model.

6      **C.      Defendant Johnson**

7      Defendant Johnson is an RN, working for CDCR at CSP-COR.  Defendant Johnson's

8  main function as an RN is to take care of patients in the absence of a physician.  He also

9  coordinates care approved by a physician.  He may not prescribe soft food diets or nutritional

10  supplements.  He is not qualified to examine dental conditions.  An RN may not prescribe

11  medications, but may continue the care ordered by a physician.

12      On August 9, 2006, Plaintiff requested a soft food diet from the medical department

13  because of his recent tooth extractions.  Defendant Johnson reviewed this request on August 10,

14  2006, and scheduled him for an appointment the following day.  On August 11, 2006, Defendant

15  Johnson took Plaintiff's medical history, his vital signs, and his weight.  Plaintiff weighed 132

16  pounds.  Defendant Johnson noted that Plaintiff was taking hydrocodone, and he counseled

17  Plaintiff on the use of pain medications.

18      Defendant Johnson contends that the food at CSP-COR is mechanically soft, meaning

19  that it can be eaten by someone without teeth.  Defendant Johnson believed that Plaintiff could

20  eat the food at CSP-COR, although it may take him longer to eat than if he had teeth.[15]

21      Defendant Johnson reviewed his records to make sure that Plaintiff was not losing a

22  significant amount of weight, making his request an emergency.  Defendant Johnson found that

23  Plaintiff's weight fluctuated.  Plaintiff weighed 133 pounds on April 26, 2006; 134 pounds on

24  May 8, 2006; 135 pounds on May 22, 2006.

25

26      [15]  Plaintiff contends that Defendant Johnson as a RN is not qualified to make this assessment.  It is unclear

27  why an individual needs to be specially qualified to make a determination as to whether food can be eaten by
   someone without teeth.  Even if Defendant Johnson may not prescribe soft food diets, that does not preclude

28  Defendant Johnson from making a determination that Plaintiff can eat mechanically soft food at CSP-COR.  This
   denial is overruled.

1    Based on Defendant Johnson's review of Plaintiff's medical records, Plaintiff's weight

2  was within his normal weight fluctuations, showing that Plaintiff was receiving appropriate

3  nutrition.  Defendant Johnson did not believe Plaintiff's request was an emergency.  Therefore,

4  he scheduled him for a routine medical line appointment for August 25, 2006, so he could see a

5  nurse practitioner or doctor regarding his request for a nutritional supplement.  Defendant

6  Johnson provided Plaintiff with the care that he believed to be appropriate.  On August 16, 2006,

7  Plaintiff composed a request for medical treatment noting the following: "On 8/11 I seen R.N.

8  Johnson upon his request who was very rude.  And put me in to see doctor (I am afraid he did

9  not.)  I am in a lot of pain and unable to eat with 3 teeth and numerous extractions in preparation

10  for dentures - both on left & right sides.  I need to see doctor ASAP."

11    Defendant Johnson received Plaintiff's request on August 17, 2006, and noted that an

12  appointment had already been made for him for August 25, 2006.  Defendant Johnson did not see

13  Plaintiff again concerning his request for a soft food diet.

14    **D.    Additional Facts**

15    On August 25, 2006, Plaintiff saw Nurse Practitioner Lu.  Plaintiff requested a liquid diet

16  supplement and an increase in his hydrocodone prescription.  Nurse Lu denied his request for an

17  increase in hydrocodone, but prescribed him a liquid diet supplement, which he began receiving

18  four days later.  Plaintiff received a liquid diet supplement three times a day from August 29,

19  2006 through September 30, 2006.

20    On October 10, 2006, a dietician saw Plaintiff concerning his general health and nutrition.

21  The dietician noted that Plaintiff's ideal body weight for a 5'5", adult male ranges from 122-149

22  lbs.  The dietician noted that he was in this range.[16]

23    Plaintiff received a liquid diet supplement three times a day from October 11, 2006

24  through October 13, 2006.  Between October 14, 2006 and November 30, 2006, Plaintiff

25  received a liquid diet supplement two times a day.

26    A blood panel diagnostic test can check for malnutrition.  The blood panel consists of an

27

28    [16]  Plaintiff contends that he was underweight.  This contention misconstrues the statement, which states only that Plaintiff was in the ideal body weight range for an adult male of his height.  Plaintiff's denial is overruled.

1   Albium reading.  Albium is a gross measure of blood proteins.  Normal Albium levels are

2   between 3.3 and 5.2.  On May 9, 2006 and October 31, 2006, Plaintiff had a blood panel

3   completed showing that his Albium levels were 4.1 and 4.3, respectively.  The May 9, 2006 and

4   October 31, 2006 panels showed that Plaintiff was not suffering from malnutrition.

5          Between April 2006 and April 2007, Plaintiff fluctuated in weight between 131 and 136

6   pounds.  At no point in time did he gain or lose more than three pounds between weighings.  He

7   was at a healthy weight the entire time between April 2006 and April 2007.  Based on his blood

8   protein levels and his weight, Plaintiff received appropriate nutrition.

9          On June 15, 2006, Plaintiff was prescribed 5/500 mg of hydrocodone/APAP three times

10   per day.  He continued to receive this medication until September 6, 2006.  On September 7,

11   2006, he began receiving 5/500 mg of hydrocodone/APAP four times per day.  He continued this

12   regimen until March 2007.[17]

13          Defendant Wilbur contends that if Plaintiff had received dental treatment on June 11,

14   2006, Plaintiff's course of dental treatment would have been the same.  Defendant Wilbur

15   contends that Plaintiff's teeth would still have been extracted, the dental department still would

16   not have provided liquid diet supplements or pain medication, and he still would have required

17   dentures.

18          Between August 11, 2006 and August 25, 2006, Plaintiff lost one pound.  Between April

19   2006 and April 2007, Plaintiff's weight fluctuated normally.

20   **III.    Analysis**

21          **A.    Deliberate Indifference To A Serious Medical Need**

22          The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does

23   not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and

24   citation omitted).   A prisoner's claim of inadequate medical care does not rise to the level of an

25   Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal

---

27   [17]  As stated previously, Plaintiff was not prescribed 500 mg of hydrocodone, but 5/500 mg of
hydrocodone/APAP.  The statement of facts is amended accordingly.

28          Plaintiff contends that this paragraph is untrue.  Plaintiff's bare denial is insufficient at this juncture of the
proceedings, and is overruled.

1  civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate

2  indifference in doing so.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting

3  *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate

4  indifference standard involves an objective and a subjective prong.  First, the alleged deprivation

5  must be, in objective terms, "sufficiently serious . . . ."  *Farmer*, 511 U.S. at 834 (citing *Wilson v.*

6  *Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[]

7  an excessive risk to inmate health or safety . . . ."  *Id.* at 837.

8         "Deliberate indifference is a high legal standard."  *Toguchi*, 391 F.3d at 1060.  "Under

9  this standard, the prison official must not only 'be aware of the facts from which the inference

10  could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

11  inference.'"  *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have

12  been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

13  matter how severe the risk.'"  *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175,

14  1188 (9th Cir. 2002)).

15     **B.     Defendant Saenz**

16         Defendant Saenz contends that she acted appropriately under the Eighth Amendment.

17  Defs.' P. & A. Support Mot. Summ. J. 8:2-13.  Defendants contend that as an LVN, she is

18  qualified only to make determinations regarding life-threatening emergencies, not dental

19  emergencies.  *Id.*  When Plaintiff informed Defendant Saenz of his dental issues, Defendant

20  Saenz informed the dental department of Plaintiff's request.  *Id.*  It was the dental department

21  who made the appointment.  *Id.*  Defendant Saenz determined that Plaintiff did not have a

22  medical emergency.  *Id.*  Defendant Saenz contends that she could not prescribe him pain

23  medication or antibiotics.  *Id.*  Defendant contends that even if he had received immediate dental

24  treatment on June 11, 2006, Plaintiff would have received the same treatment.

25         Plaintiff contends that Defendant Saenz could have done more to assist Plaintiff.  Pl.'s P.

26  & A. Support Opp'n 5-6.  Plaintiff contends that there is 24 hour dental care on call, citing

27

28

1    section 3354, Title 15 of the California Code of Regulations.[18]  *Id.*  Plaintiff contends that

2    Defendant Saenz watched Plaintiff suffer in pain for 30 days and did nothing.  *Id.*

3         Based on the undisputed facts, Defendant Saenz did act by informing the dental

4    department of Plaintiff's dental issues, and the department arranged for the appointment.

5    Defendant Saenz made the determination that Plaintiff's dental issues did not qualify as an

6    emergency.  Thus, there is evidence that Defendant Saenz did not disregard Plaintiff's health

7    issues.  Whether or not she was accurate in her assessment is a different matter, but would rise at

8    most to the level of medical negligence, which is not a violation of the Eighth Amendment.

9    *Toguchi*, 391 F.3d at 1057 ("Mere negligence in diagnosing or treating a medical condition,

10   without more, does not violate a prisoner's Eighth Amendment rights.") (citation omitted).

11   Construing the submitted evidence in light most favorable to the non-moving party, the Court

12   does not find a disputed issue of material fact.  Defendant Saenz is entitled to summary judgment

13   as to Plaintiff's Eighth Amendment claim.

14        **C.      Defendant Johnson**

15        Defendant Johnson contends that he did not cause Plaintiff a serious injury by failing to

16   provide Plaintiff with nutritional supplements.  Defs.' P. & A. Support Mot. Summ. J. 9:3-13.

17   Plaintiff requested nutritional supplements from Defendant Johnson on August 9, 2006.  (*Id.*)

18   Plaintiff received nutritional supplements on August 25, 2006.  *Id.*  Defendants contend that

19   Plaintiff suffered no injury over this two-week period, as he lost only one pound, and he did not

20   suffer from malnutrition.  *Id.*

21        Plaintiff contends that Defendant Johnson knew of Plaintiff's dental issues and should

22   have notified a physician on call regarding Plaintiff's request for nutritional supplements, like

23   nurse practitioner Lu did.  Pl. P. & A. Support Opp'n 6-7.  Plaintiff further contends that food at

24   CSP-COR is not mechanically soft.  *Id.*

25

---

26   [18]  That section governs when emergency medical or dental treatment is necessary, and states: "Emergency

27   care category: A dental emergency, as determined by health care staff, includes any medical or dental condition for
     which evaluation and treatment are necessary to prevent death, severe or permanent disability, or to alleviate

28   disabling pain.  Immediate treatment shall be provided and will be available to such inmates 24 hours a day, 7 days a
     week."  Cal. Code Regs. tit. 15, § 3354(f)(1).

1    As stated previously, Plaintiff has not presented sufficient evidence that food at CSP-

2   COR is not mechanically soft.  Even if it was not, Defendant Johnson believed that it was, and

3   that Plaintiff would be able to eat the food.  Additionally, there does not appear to be harm to

4   Plaintiff for this two-week delay in receiving liquid supplements.  Plaintiff lost only a pound of

5   weight, and did not suffer from malnutrition.  At worst, Defendant Johnson was negligent in

6   failing to prescribe a nutritional supplement for Plaintiff, which is not sufficient for a cognizable

7   Eighth Amendment claim for deliberate indifference.  *Toguchi*, 391 F.3d at 1057.  Even

8   construing the facts in light most favorable to Plaintiff, the Court does not find a disputed issue

9   of material fact.  Accordingly, Defendant Johnson is entitled to summary judgment as to

10   Plaintiff's Eighth Amendment claim.

11       **D.    Defendant Wilbur**

12       Defendant Wilbur contends that he gave appropriate care regarding the fixture of  his

13   dentures, not providing a liquid treatment, and not prescribing antibiotics or pain medication.

14   (Defs.' P. & A. Support Mot. Summ. J. 9:16-10:5.  Defendants contend that Plaintiff's dentures

15   were beyond repair, and Defendant Wilbur began the process of obtaining new dentures for

16   Plaintiff.  *Id.*  Defendants contend that Defendant Wilbur did not prescribe a nutritional

17   supplement pursuant to CDCR policy.  *Id.*  Defendants contend that Defendant Wilbur did not

18   prescribe antibiotics because Plaintiff did not have an infection.  *Id.*  Defendants contend that

19   Defendant Wilbur did not prescribe pain medication because 1) removal of the tooth should have

20   resolved the residual pain and 2) further pain medication was unnecessary because Plaintiff was

21   already taking 500 mg of hydrocodone.  *Id.*

22       Plaintiff contends that Defendant Wilbur failed to repair Plaintiff's dentures.  Pl.'s P. &

23   A. Support Opp'n 8-9.[19]  Plaintiff contends that Defendant Wilbur was fully capable of ordering

24   nutritional supplements, but failed to do so.  *Id.*  Plaintiff again contends that CSP-COR's food is

25   not mechanically soft.  *Id.*  Plaintiff contends that he informed Defendant Wilbur that he was on a

---

[19]  Plaintiff also contends a violation of the settlement agreement reached in *Perez v. Tilton*, 3:05-CV-05241-JSW.  Plaintiff contends that Defendant Wilbur waited until July 17, 2006 before extracting Plaintiff's tooth.  That settlement agreement is not at issue in this action.  Additionally, there is no evidence to support a finding that Defendant Wilbur was aware of Plaintiff's dental needs until he examined Plaintiff on July 17, 2006.

1   low dose of pain medication for a spinal injury that did not also encompass Plaintiff's dental
2   pain. *Id.*

3          Defendant Wilbur began the process of obtaining new dentures for Plaintiff on July 17,
4   2006.  The process was not completed until January 24, 2007.  It does not appear that Plaintiff
5   suffered any ill effects while he awaited new dentures.  Plaintiff's weight was within the ideal
6   body weight range for an adult male of his height, and Plaintiff did not suffer from malnutrition.
7   Defendant Wilbur did not disregard a serious risk to Plaintiff's health.  *See Toguchi*, 391 F.3d at
8   1057.  Thus, there is no dispute of material fact regarding Plaintiff's dentures, and Defendant
9   Wilbur is entitled to summary judgment as to this claim.

10         Defendant Wilbur believed that the food at CSP-COR was mechanically soft.  Plaintiff
11  did not present sufficient evidence to demonstrate that the food at CSP-COR was not
12  mechanically soft.  Even if it was not, Defendant Wilbur did not believe he could provide
13  Plaintiff with the requested nutritional supplements.  Though it appears that Defendant Wilbur
14  may be able to, he did not believe he could.  Thus, his action in referring Plaintiff to the medical
15  office demonstrates that he did not disregard a serious risk to Plaintiff's health.  *See id.*  There is
16  thus no dispute of material fact regarding nutritional supplements, and Defendant Wilbur is
17  entitled to summary judgment as to this claim.

18         Defendant Wilbur also did not find that Plaintiff had a bacterial infection, and thus did
19  not prescribe antibiotics.  Plaintiff contends that he did have an infection, but provides
20  insufficient evidence to support this contention.  There is thus no dispute of material fact
21  regarding antibiotics, and Defendant Wilbur is entitled to summary judgment as to this claim.

22         Plaintiff declared that he continued to suffer pain after the removal of the tooth and
23  requested further pain medication.  Defendant declared that he believed 500 mg of hydrocodone
24  to be sufficient pain medication and did not prescribe any additional medication.  However,
25  Plaintiff was not prescribed 500 mg of hydrocodone, but rather was prescribed 5/500 mg of
26  hydrocone/APAP.  Defendant Wilbur's declaration that he believed Plaintiff's pain medication to
27  be sufficient is incorrect as to the amount of medication.

28         Even with this discrepancy, Defendant Wilbur is entitled to summary judgment as to the

1   claim regarding pain medication.  Whether the pain medication was 5/500 mg of

2   hydrocodone/APAP or 500 mg of hydrocodone, Defendant Wilbur found that Plaintiff was

3   already receiving more than sufficient pain medication and decided to not prescribe more.

4   Plaintiff had at most a difference of opinion with Defendant Wilbur as to the proper amount of

5   pain medication, which is not a cognizable Eighth Amendment claim.  *Toguchi.* 391 F.3d at

6   1059-60.  Thus, Defendant Wilbur did not know of and *disregard* a serious harm to Plaintiff.

7               **E.    Qualified Immunity**

8               Defendants contend that they are entitled to qualified immunity.  Government officials

9   enjoy qualified immunity from civil damages unless their conduct violates "clearly established

10  statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

11  *Fitzgerald*, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified immunity, one

12  inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts

13  alleged show the defendant's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S.

14  194, 201 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 813 (2009) ("*Saucier*

15  procedure should not be regarded as an inflexible requirement").  The other inquiry is whether

16  the right was clearly established.  *Saucier*, 533 U.S. at 201.  The inquiry "must be undertaken in

17  light of the specific context of the case, not as a broad general proposition . . . ."  *Id.*  "[T]he right

18  the official is alleged to have violated must have been 'clearly established' in a more

19  particularized, and hence more relevant, sense:  The contours of the right must be sufficiently

20  clear that a reasonable official would understand that what he is doing violates that right."

21  *Saucier*, 533 U.S. at 202 (citation omitted).  In resolving these issues, the court must view the

22  evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor

23  of plaintiff.  *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).  Qualified immunity

24  protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v.*

25  *Briggs*, 475 U.S. 335, 341 (1986).

26              Because all Defendants are entitled to summary judgment, the Court declines to address

27  Defendants' arguments regarding qualified immunity.

28  ///

                                        15

IV. **Conclusion and Order**

Based on the foregoing, it is HEREBY ORDERED that

1. Defendants' motion for summary judgment, filed March 5, 2010, is GRANTED in full;

2. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff; and

3. The Clerk of Court is directed to close this action.

IT IS SO ORDERED.

**Dated:**   **December 10, 2010**                **/s/ Dennis L. Beck**
                                                                            UNITED STATES MAGISTRATE JUDGE